The next case today is United States v. Emmanuel Akoto, Appeal No. 21-1804. Attorney Silva, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Sarah Silva here on behalf of the appellant, Defendant Emmanuel Akoto. May I please reserve two minutes for rebuttal? You may. Thank you, Your Honor. Mr. Akoto has raised three errors in his appeal, and with the Court's indulgence, I would like to begin by addressing the error connected to the locks calculation in this case. At sentencing, Mr. Akoto's guideline range was increased by 20 levels under 2B1.1 based on an intended loss figure of more than $1.3 million. That figure was based entirely on a methodology that did not take into account the record evidence concerning the fact that the seller of the personal identifying information at issue in this case had made his PII data widely available to 1,300 other unrelated people who were also engaged in similar fraud schemes, and that the data had been used in more than 13,000 fraudulent tax returns in the years at issue in this case. The methodology that was, and Your Honors can see that in the testimony of the trial at trial at the corrected joint appendix pages 148 and 149, and also in the PSR. What's the universe of potential fraudulent filings that the data set contained? Is it 50,000, something like that? The data set, I believe, had thousands, if not more than that, hundreds of thousands of pieces of personal identifying information. Is that what the information shows that the seller was providing to others? Yes, correct, Your Honor. What's the universe of information that we have tied? Information, not fraudulent filings. Information tied to your client. The only information that was identified at sentencing was a universe that could potentially be tied to the conspiracy at issue in this case. How big is that relative to the universe of what the seller was dealing in? It's much smaller than the universe of the seller. I don't have the exact numbers, Your Honor. It is in the PSR. In fact, if I can turn to that. The reason I ask you, it seems to me that at least there's a possibility that the inference that the 309 are all traceable to your client rather than to the seller when the 309 happened to be in your client's universe. It increases if the seller's universe is much, much, much larger. If they're coterminous, it decreases, right? That seems to me to stand to reason. It is certainly a possibility, but Your Honor, we submit it is not a probability or at least more probable than not. And here's why. If the court were to look at the Cobb case, which is an 11th Circuit case that we cited in our brief, there the government started with the exact same methodology that was used here. The government looked to personal identifying information found in the defendant's possession, looked to tax returns to see which tax returns used that same information, and then the Cobb case, the government went further. That merely established the universe of possible tax returns at issue. In Cobb, the government then looked to specifics about the modus operandi of the conspiracy in front of it. It looked to similarities in the tax returns in the universe that had been identified. It excluded tax returns that didn't fit the pattern that was apparent in the conspiracy at issue. And in the course of that analysis, it reduced the universe of possible fraudulent tax returns by 85%. And it came down to a number that was supported not only by the mere possession of information that existed in a tax return, but also by specifics concerning the conspiracy in front of it. The government didn't do any of that in this case. It merely stopped at identifying the universe of possible tax returns at issue. And we submit, Your Honor, that is not enough. Even if what you're saying is true, might provide support for inclusion about actual loss, with respect to intended loss, why wouldn't it make sense to say that with respect to the universe of information that your client had, his intention was to file a fraudulent return for every return that could be filed fraudulently, so that it's at least as big as 309, since, in fact, the universe he had information about exceeded 309 such returns. Your Honor, the evidence... First, I submit that that stretches the notion of intended loss too far, because intended loss still needs to be connected to the conduct at issue. And in this case, the testimony and the evidence in the trial was that people, including members of the conspiracy, received many pieces of personal identifying information. Not all of them were submitted to the IRS. And of the ones that were submitted to the IRS, not all of them resulted in a fraudulent tax return. But I think more to the point, the issue here is where there is no question that the identifying information that was possessed in this conspiracy was possessed by thousands of other people and used in tens of thousands of other fraudulent tax returns, the government seemed to need to do something more. And that, Your Honor, is a rule that the 11th Circuit applied more than 20 years ago under the mandatory guidelines regime in a case called U.S. v. Cabrera. It's an analogous situation there. In that case, the defendant was convicted of cloning cell phones. He did that by using identifying numbers provided to him by third parties. Ms. Silva, going back to Judge Barron's absolutely correct focus on intended loss, the fact that they weren't successful with the IRS hardly helps your case. So let's drop that out. Your argument seems to devolve into, well, some of the buyers who may well have intended to use the information for illegitimate purposes, including filing false tax returns, because that's what this conspiracy was about. They did not in all instances. Even if that were true, why is this an unreasonable inference sufficient to support the government's burden on intended loss? Yes, Your Honor, because where 1,300 other unrelated individuals possess the same information, the mere fact that a tax return was filed with that information told the court nothing about whether it was filed by any of the members of this conspiracy. Well, can I ask you just, for purposes of intended loss, are you saying that the intended loss must be based on a filing, whether or not the filing is successful, as opposed to an intention with respect to filings, whether or not a filing is made? Not necessarily, Your Honor. It's merely that the intended loss was based on what was filed in this case. That was all the court looked to. That was all the government looked to. Five minutes remaining. Five minutes. So, for example, in a different kind of case, if there were 7,000 pieces of personally identifying information in the possession of a defendant, but the defendant didn't use them for any purpose, I'm not aware of a case that would find intended loss on the basis of the mere possession of information. There needs to be some connection to a cost. Do you want to address the other issue in the case in terms of conviction? Thank you, Your Honor. We have also challenged the convictions on Counts 2 through 4, which were the three substantive wire offenses that were predicated on three specific emails sent to an undercover agent in the District of New Hampshire on three dates in 2014. The trial court we submit erroneously instructed the jury that Mr. Okoto could be found guilty on those counts upon proof that he aided and abetted the electronic filing of a tax return with the IRS. That claim of error is on plain error review. Am I correct about that? That is correct, Judge Stelia. It was not preserved. All right. Thank you. Yes, sir. And we do submit that is a high burden. We believe it is met in this case. The instructions plainly went beyond the clear language of the indictment. You can see that at page 163 in the oral instructions and page 72 to 73, both in the corrected joint appendix, with regard to the written instructions. But the instructions read as a whole appear to narrow the language to which you referred. Your Honor, it actually went in the opposite way. In describing the Counts 2 through 4, the court initially did refer to the indictment and the three wires, the emails that were charged in Counts 2 through 4. The court then went on to broaden the basis for which Mr. Okoto could be convicted on those counts by specifically instructing the jury that a wire transmission for purposes of these three counts could include the electronic filing of a tax return with the IRS. We submit that affected Mr. Okoto's substantial rights not only because it denied him the right to be convicted on a charge that was returned by a grand jury, but also because those three emails were the only wires that passed through the District of New Hampshire, and thus he was actually convicted potentially on charges that would not have satisfied venue in the District of New Hampshire. So for that reason, Your Honor, we believe we do satisfy the plain error review. Finally, we have raised an issue of ineffective assistance of counsel. It is a narrow issue. It is based on counsel's failure to move for judgment of acquittal at the close of the government's case after the government's evidence established that the tax return that formed the predicate for the aggravated identity theft charge at Count 5 was, in fact, submitted to the IRS more than five years before the indictment was returned. We appreciate that ineffective assistance claims are very rarely reviewed on direct appeal. We have raised this narrow issue because, in this case, there is absolutely no conceivable strategic reason for a trial counsel to allow a charge that carries a 24-month mandatory... You make a flat assertion in your brief that there was no evidence of any activity within the limitation period. The government brief says, no, that is not so. The government refund check was issued and sent during that time period, and that the statute requires...provides that possession of the stolen identity information is itself actionable and your client continue to possess the information. Okay, what's your response to those two points without even getting into the continuing violation doctrine? With regard to the record evidence, Your Honor, the government is simply not correct. They didn't cite any record evidence in support of the notion that a refund check was paid. Excuse me. They made exactly the arguments that I just described to you. Are you saying there is no evidence the refund check was, in fact, cashed in?  Yes, Your Honor. Why isn't the issuance of a refund check an action that is one of the intended effects of the conspiracy? Your Honor, if you look to Exhibit E to the loss calculation that the government submitted, it's a part of the sealed supplemental joint appendix. That exhibit... That's time. May I finish the thought? Yes, please. That exhibit lists all of the tax returns that the government attributed to the defendant in the course of the conspiracy. That list does not include the tax return that formed the predicate of Count 5. So there is no evidence, even by the government's own submissions, that that tax return was ever...a refund was ever paid. The last piece of...the last use made in connection with that identifying information was in the course of submitting the tax return, which was submitted more than five years before the indictment was returned. Could you address Judge Lynch's question about the continuing possession of the identity information? Yes, Your Honor. Because of the nature of the information that was possessed in this case, we think that that rule wouldn't apply. For example, we are talking about names, dates of birth, home addresses, work histories, things of that nature. These are not prohibited information merely to possess. It's not something like a medical record, which is prohibited to be possessed under HIPAA. So the mere possession of the information is not criminal, and the government has never argued as such and certainly presented no evidence or legal instruction to the jury on that issue. It was the use of the information in the course of filing a false tax return that rendered...that formed the basis of the aggravated identity theft count. Thank you. Any further questions? No. Thank you. Thank you, Attorney Silvett. At this time, please mute your camera and your microphone. Would Attorney Cook please unmute and introduce herself on the record to begin? Good morning. May it please the court, Hannah Cook for the United States. If you wouldn't mind starting with this ineffective assistance issue since we just discussed it and it goes to the convictions, that would be helpful. Yes, Your Honor. Responding specifically starting where Judge Lynch left off regarding the evidence of activity and possession, I would submit that the jury was presented with evidence that the refund was received within the statute of limitations, that is to say, on December 5th of 2012. That can be... Where in the transcript or in the appendix will we find that? That is found at Exhibit 20A. That's in Joint Appendix page 143. It's also in Government Exhibit 21A, which you can see it is not in the Joint Appendix, although it is in the record, and that was shown to the witness, Carla Arnold, the individual whose identity was stolen. You can see that on Docket 112 at pages 48 and 49. Government Exhibit 21A is the bank record of the debit card onto which the refund was deposited. The jury also heard evidence that the manner in which the scheme was conducted was that the refunds were sought using the identities and then deposited onto a debit card in the victim's name. Ms. Arnold was shown Government Exhibit 21A, the record of the debit card, and asked, did you live in Irving, Texas, which is where the debit card was registered? She said no. Did you receive this refund, the government indicating the $5,155 refund that had been put on the debit card? She said no. To go further onto my friend's point regarding authority to possess, the government showed Ms. Arnold Government Exhibit 3N, as in Nancy, that's at Docket 112 at page 51, and said, do you know the defendant? No. Do you know Mr. Quay? No. Do you know these two email addresses? No. Do you know why your name and Social Security number is in this email? She said she had, quote, no idea. That demonstrates that this defendant did not have lawful authority to possess or use Ms. Arnold's Social Security number. Going further regarding the possession question that Judge Lynch asked, unlike, for example, in the Fields case where possession was not charged, the indictment here charged both possession and use of the identity. You can see that in Joint Appendix 30, that's paragraph 23 of Count 6, where the phrase possession and use is charged. Similarly, the jury instructions also charged possessed or used. That's at Joint Appendix 81. And if you look at the government's summation, which is not, this portion is not in the Joint Appendix, but it is on the District Court Docket 113 at pages 60 to 62, the government also lists possession as a way to satisfy these elements, and discussed that we knew the defendant had possessed the information because it was in the email that had been shown to Ms. Arnold, that is to say, Government Exhibit 3N. So the government proved factually both that the refund had been received and that the defendant had continued to possess the information in his email well into 2013. We can see that from the testimony of Agent O'Neill, who testified that government exhibits, including Government Exhibit 3N, had been received in a search warrant that he had issued during his 2013 investigation. So there are a number of reasons why factually the count was timely, although obviously this court does not need to reach that issue because this court's usual practice is to not address claims of ineffective assistance of counsel on direct appeal. I'd like to, with your Honor's permission, move briefly to Judge Barron's question that was on the loss calculation issue. Just one second before you get to that, just so I understand, given what you've just said about what the record shows with respect to the statute of limitations. I understand that we say sometimes if there's further factual development needed, it'd be premature for us to address it. If I'm hearing you right, there is no further factual development. So why would we defer resolution of the question? Your Honor, I think the question is, and this court addressed a similar issue in Miller, there are sort of two ways to address the issue. One is to look at the actual facts and say, look, there's obviously no ineffective assistance of counsel because the count was, in fact, timely. And that's certainly a way to resolve this case. Indeed, that's similar to the Netanyahu case, where this court found that it did not need further factual development because it was clear on the face of that record that no ineffective assistance of counsel had been provided. And I think that is certainly one way this court could address the case. I merely mean to suggest that there is an alternative method of approaching this case, which is that there are still facts undeveloped regarding counsel's never-foregoing making this argument to the jury. And so to the extent this court did not wish to address the timeliness issue in the first instance, although it certainly can, that would be another alternative ground to simply not address it. Just one follow-up on that. I guess the only thing that makes me hesitant on that score is, if it were clear that it was a viable defense, which I take it you're saying, if anything, it's clear the other way, and at most it's a very questionable proposition that there would be anything to argue here. But if it were clear that it was a viable defense, are you saying it would still be premature because there might be some possible strategic reason why in a case like this foregoing the statute of limitations defense would make any sense? Yes, Your Honor. And I submit that that's what this court did in Miller. Where in Miller, and I'm quoting here, what this court said was, quote, we are unable to discern any strategic or tactical reason for spurning the defense. That too was a statute of limitations defense case. And this court still said, look, we want to give defense counsel the opportunity to explain his reasoning for not pursuing the statute of limitations defense. And quite frankly, in Miller, it was, if anything, more egregious because there it would have been a complete defense to the entire indictment rather than one of two counts that held the same penalty. So I would submit that even if this court were inclined to be concerned about the statute of limitations issue generally, it is still within this court's practice to allow the district court to make an evaluation of counsel's overall performance and to allow counsel to explain his reason for foregoing the defense. And I'd also point to Your Honors, and I don't believe my friend on the other side disputes this, that the indictment was timely. So even if there was some concern, what we're really talking about is counsel's decision not to submit the statute of limitations issue to the jury, which obviously involves tactical considerations in terms of, did he want to devote time in closing to that? Did he want to prove up essentially this count by further factually developing this claim, or did he want to pursue the theory that he actually pursued, which was none of these counts apply to my client because my client wasn't the man behind the email address. And I would submit to Your Honors that there is at least a potential strategic or tactical reason to choose not to focus on the facts of that particular count, but instead to move forward with a defense that was a complete defense. Ms. Cook, could you get to the intended loss calculation issue? Yes, Your Honors. And I'd like to start with Judge Barron's question regarding what is the universe, because I think it's very important. So the facts in the PSR regarding the other sales that were made, those span a six-year conspiracy from 2007 to 2013, which is to say significantly longer than the scope of the conspiracy at issue in this case. The PSR shows that of the inventory of 176,000 identities, that's the sealed joint appendix, page 50, of those 176,000, 1,300 people, over the course of his significantly more extended conspiracy, those 1,300 people received some subset of those identities. The evidence in this case was that the way the transaction worked is that individuals would reach out via email to Mr. No, the hacker, and say, I want 200 identities. And indeed, it was the practice of this conspiracy, or at least this conspirator, the defendant, to ask for, quote, fresh identities, or identities that, quote, would pass. And particularly, he would request ones that had been recently hacked. He would request, quote, 2011, or once the year had turned to 2012, 2012, if possible, identities. So he's asking for new inventory, essentially, not inventory from the general. Within that, it's also important to remember that you can't file a false tax return in advance. So although Mr. No is selling information for a variety of fraud schemes during his extended business, you could only file a 2010, 2011, or 2012 tax return in 2011, 2012, or 20. I'm sorry. I'm sorry. I apologize. Go ahead. No, no, no problem. I just didn't want to cut anyone off. There's about five minutes left. Thank you. So the returns in this case, which we can see on the spreadsheet, were filed for tax years 2010, 11, or 12. That means they must have been filed during the time period of this conspiracy. That is to say, 2011, 2012, or 2013, because you simply can't file a tax return in advance. So the universe here is significantly more limited than the general universe of the conduct that was involved with Mr. No, the hacker. And more specifically, going to the question of connection, I would remind your honors that here, these returns were a process similar to that approved by this court in Flatey Garcia. In Flatey Garcia, it was also a false tax return scheme. And the government, for the intended loss calculation, took a list of identities, which Mr. Flatey Garcia had provided to a co-conspirator, and then performed an analysis to see whether those identities had been used to file false returns. This court upheld the court's loss calculation, even though there was evidence in that record that the co-conspirator who was filing the tax returns had engaged in what this court referred to as freelancing, and had also attempted to sell the identities to at least one other wrongdoer. But this court held that the government had met its burden by proving, by a preponderance of the evidence, that the tax returns were more likely than not filed by this conspiracy, given that the conspirators had possessed that information for the purpose of filing tax returns during the time frame in which they were filed. So to here, we have the universe of 2,000 emails that was analyzed, and then shown that there were false tax returns filed using information from that analysis during the period of this conspiracy with the object of this conspiracy, which is, of course, to file false tax returns during the years at issue. And I would submit that that does demonstrate, by a preponderance of the evidence, and the district court did not clearly err in so finding. I'm not sure I completely followed your accounting of the evidence in the following respect. Is there evidence that excludes the possibility that the... Are you saying that the evidence excludes the possibility that the seller of the information distributed the same 2,000, universe of 2,000, to anyone else? No, Your Honor. The record doesn't say whether or not these particular identities were sold to any other individual, and if they were sold during what time frame. What I'm saying is that there is good evidence in the record that these particular identities, A, were sold to this conspiracy. They were sold to this defendant or one of his conspirators for the purpose of filing tax returns, but they were used during the time frame of this scheme, and that it was their practice to seek updated identities that would pass. That is to say, that had been recently hacked and thus are less likely to have been used by some other conspiracy for the fraud. Okay. Well, in that case, Your Honors, I'd ask if you have no further questions that you affirm defendant's convictions as well as his sentence. Thank you. Thank you. Thank you, Counsel. At this time, you can mute your camera and your microphone and Attorney Silva. You have a two-minute rebuttal. Please reintroduce yourself on the record to begin. Thank you. Sarah Silva here again on behalf of Appellant Defendant Emmanuel Okoto. Your Honors, it is very important, critically important to the loss argument to understand that there was no time period given by the government for either the tax returns, the date they were filed, or the date of the emails that contained the personal identifying information on which the government relied for the intended loss figure. In other words, we don't know if a tax return was filed in 2010 and the information appeared in an email in 2012. We have no information about that and neither did the Again, we are not saying the government needed to follow Cobb. We are not saying the government needed to follow Fleet Garcia, in which, in that case, the agents actually traced money from some of those tax returns to bank accounts of the co-conspirators and the defendant. In this case, not a single dollar was traced to either Mr. Okoto or any of the co-conspirators at issue. So, it may be that having a temporal connection might be enough to satisfy intended loss under the guidelines, but the court didn't have that information and neither does this court and none of us do. Without that, all the government did was stop at that very first step of Cobb to identify the universe of possible tax returns connected to this conspiracy, not probable tax returns. Could you just also address, back on the conviction and the ineffective assistance point, assuming you are right that there was a statute of limitations argument that could have been made, how do you distinguish Miller with respect to whether we should address it now or leave it for a subsequent proceeding? Your Honor, I hold on deciding that issue and allowed the district court to reach it in the first instance. Miller had some facts that were quite specific there. In that case, defense counsel had stated on the record he was aware of a potential statute of limitations defense. He asked for additional time to review it. After that colloquy with the court, quite a period of time later, the defendant in Miller pleaded guilty and entered into a plea agreement with the government. That gives rise to at least a question as to whether that defendant knowingly waived. Do you have anything to say in response to your opponent's contention about the evidence that would support the violation extending past what you think the drop-dead date was, which I take it is the evidence of possession of the social security number and record material showing that possession itself was charged of such information. And then also what was said about the information showing the payment of the fraudulently filed tax reform after the date that you identified. Yes, Your Honor. With regard to the page, I believe it was 145 of the joint appendix that the government sorry, 143 of the corrected joint appendix. The government referenced an account transcript for the tax return at issue. There was no testimony explaining what this document meant and the dates and the information is ambiguous at best. And then with respect to the possession of the social security number. Again, Your Honor, possessing someone's date of birth, social security number, name, address, work history, that is not prohibited by law. The prohibition the legal prohibition, Your Honor, is in the use. And since the government didn't pursue a trial, I'm not challenging the fact that it was charged, but it was not pursued a trial and there was no evidence or legal basis for the jury to find that possession was the legal violation at issue there. Thank you. Any further questions? Thank you. Thank you, Your Honors. That concludes argument in this case. Thank you, counsel. You are excused. Attorney Silva and Attorney Cook, you should disconnect from the hearing at this time.